NOT FOR PUBLICATION (Doc. No. 27)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | | |
|---|---|---|
| MICHAEL CENEVIVA and JANICE CENEVIVA, | : : : | |
| Plaintiffs, | : : | Civil No. 09-2452 (RBK/AMD) |
| v. | : : | **OPINION** |
| RYAN HOMES and RICHARD RICKARDS, | : : : | |
| Defendants. | : : | |

**KUGLER**, United States District Judge:

This is a personal injury case. Plaintiff Michael Ceneviva fell off a ladder while working for a subcontractor hired by Defendant NVR, Inc. d/b/a Ryan Homes. Plaintiff claims that he fell because Defendant Richard Rickards, an employee of Ryan Homes, was negligent in holding the ladder. Presently before the Court is Defendants' motion for summary judgment. Because there is a material issue of fact as to whether Rickards assumed a duty to hold the ladder, and because an employer may be liable for the negligence of its employees committed while acting within the scope of their employment, the Court denies Defendants' motion for summary judgement.

**I. BACKGROUND**

Ryan Homes constructs single family residences. Sometime before 2008, Ryan Homes constructed a residence on Ardmore Road in Mays Landing, New Jersey (the "Property"). Ryan Homes issued the purchasers of the Property a warranty for the residence. In October 2008, the homeowners contacted Ryan Homes about a water leak between the brick and flashing on the

front side of the home. Rickards, a service manager for Ryan Homes, handled the homeowners' complaint. In order to cover necessary repairs, Ryan Homes contracted with Metal Tech Roofing and Siding, Inc. ("Metal Tech"). Pursuant to the contract, Metal Tech performed work for Ryan Homes as an independent contractor. Metal Tech employed Plaintiff as a job supervisor. As part of his job, Plaintiff performed service and inspection work regarding roofing and siding.

In response to the reported leak, Ryan Homes asked Metal Tech to send a representative to the Property to investigate the leak. Metal Tech sent Plaintiff. Ryan Homes also sent Rickards to assist with the inspection. Plaintiff and Rickards met at the Property on October 30, 2008. They each present different stories regarding Plaintiff's inspection and fall.

Plaintiff asserts that when Rickards introduced himself to Plaintiff at the Property, Rickards told Plaintiff: "I may not be much help, but at least I can hold the ladder for you." (Ceneviva Dep. 31:15-32). Plaintiff climbed the ladder a total of four times during the inspection. The first time, Plaintiff arranged the ladder and asked Rickards to hold it while he climbed. Plaintiff saw Rickards holding the ladder as he climbed, but Plaintiff began descending the ladder without checking whether Rickards was holding the ladder. When Plaintiff got to the bottom of the ladder, he saw Rickards holding the ladder with one hand. Plaintiff then moved the ladder. Plaintiff climbed the ladder the second time without talking to Rickards, but when Plaintiff climbed back down, he observed Rickards holding the ladder with one hand. Plaintiff moved the ladder again. This time, Plaintiff asked Rickards to hold the ladder before he ascended and before he descended. Plaintiff moved the ladder a fourth time. He again asked Rickards to hold it. Plaintiff climbed up the ladder and began removing a caulk gun from his tool pouch. Plaintiff then "heard a noise of the feet [of the ladder] sliding[.]" (Ceneviva Dep.

2

89:11-16). The ladder came out from under him, and he fell to the ground. Plaintiff did not see where Rickards was at the time the noise occurred.

Rickards, on the other hand, asserts that Plaintiff never asked him to hold the ladder and that he never offered to hold the ladder. (Rickards Dep. 39:18-40:10). According to Rickards, he "didn't feel" that holding the ladder "was part of [his] job." (Rickards Dep. 40:8-10). Rickards claims that the fourth time Plaintiff moved the ladder, Plaintiff was doing repair work instead of inspection work. Thus, Rickards decided to stay on the property and "do other things" while Plaintiff performed the repairs. (Rickards Dep. 45:8-46:19). During Plaintiff's fourth ascent up the ladder, Rickards did not know where the ladder was. (Rickards Dep. 44:25-12). Rickards claims that he was either at the sidewalk or walking to the sidewalk, when Plaintiff fell.

Plaintiff originally filed suit in state court asserting a negligence claim against Defendants and a loss of consortium claim on behalf of Mrs. Cenevivia. Defendants removed the matter to this Court based on diversity jurisdiction. Defendants now move for summary judgment. Defendants' sole argument is that they did not owe a duty to Plaintiff because he was employed by Metal Tech and Metal Tech was an independent contractor for Ryan Homes. Plaintiff responds that Defendants are liable because Rickards assumed a duty to hold the ladder while acting within the scope of his employment.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A genuine issue of material fact exists only if the evidence is such that a reasonable jury could find for the

nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  When the Court weighs the evidence presented by the parties, the Court is not to make credibility determinations regarding witness testimony.  Sunoco, Inc. v. MX Wholesale Fuel Corp., 565 F. Supp. 2d 572, 575 (D.N.J. 2008).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson, 477 U.S. at 255.

However, to defeat a motion for summary judgment, the nonmoving party must present competent evidence that would be admissible at trial.  See Stelwagon Mfg. Co. v. Tarmac Roofing Sys., 63 F.3d 1267, 1275 n.17 (3d Cir. 1995).  The nonmoving party "may not rest upon the mere allegations or denials of" its pleadings and must present more than just "bare assertions [or] conclusory allegations or suspicions" to establish the existence of a genuine issue of material fact.  Fireman's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982) (citation omitted); see Fed. R. Civ. P. 56(e).  "A party's failure to make a showing that is 'sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,' mandates the entry of summary judgment."  Watson v. Eastman Kodak Co., 235 F.3d 851, 857-58 (3d Cir. 2000) (quoting Celotex Corp., 477 U.S. at 322).

**III. DISCUSSION**

**A. Rickards's Liability**

Defendants argue that Rickards "did not have a legal duty to hold the ladder for the plaintiff" and that "[t]here is simply no evidence of any negligence on the part of . . . Rickards[.]" (Defs.' Br., at 8).  Plaintiff argues that although Rickards may not have had an initial duty to hold the ladder for Plaintiff, when Rickards agreed to hold the ladder, he assumed a duty to do so "safely and with the proper degree of care[.]"  (Pls.' Br., at 6).

In New Jersey, "[t]he question of whether a duty exists is typically a matter of law[.]" Wang v. Allstate Ins. Co., 592 A.2d 527, 534 (N.J. 1991). The existence of a duty "turns on whether [its] imposition . . . satisfies an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy." Hopkins v. Fox & Lazo Realtors, 625 A.2d 1110, 1116 (N.J. 1993). To decide whether to impose a duty, the court must "engage in a complex analysis that weighs and balances related factors, including the foreseeability and severity of the underlying risk of harm, the ability to exercise care to prevent the harm, [and] the comparative interests and relationships of the parties[.]" Thorne v. Miller, 722 A.2d 626, 629 (N.J. Super. Ct. L. Div. 1998). The foreseeability analysis includes both the foreseeability that the plaintiff will reasonably rely on the defendant's action and the foreseeability that harm will result. See id.

New Jersey courts have imposed duties of reasonable care on defendants who voluntarily undertake services. See id. at 629. "Where the defendant has gratuitously undertaken to do an act or perform a service recognizably necessary to another's bodily safety and there is reasonable reliance thereon, the defendant will be liable for harm sustained by the other resulting from his failure to exercise reasonable care to carry out the undertaking." Johnson v. Souza, 176 A.2d 797, 798-99 (N.J. Super. Ct. App. Div. 1961); see also Restatement (Second) of Tort § 323; N.J. Model Civil Jury Charge 5.10C (providing jury instructions for a negligence claim based on an "undertaking voluntarily assumed" in "the absence of a legal obligation to do so"); see Thorne, 722 A.2d at 629 (holding that a driver who voluntarily "waves" another driver into traffic assumes a duty to exercise reasonable care even though drivers do not have an independent duty to check traffic for other drivers).

Thus, under New Jersey law, a person may assume an obligation to exercise reasonable care in holding a ladder for another person even though he does not have an independent obligation to anchor the ladder. If a person voluntarily holds a ladder for another person, reliance by the dependant party is foreseeable, the risk of harm is serious, and the party assuming the duty could reasonably prevent foreseeable harm by exercising reasonable care. Consequently, a person who voluntarily agrees to hold a ladder for another has a duty to exercise reasonable care in anchoring the ladder.

Here, there is a material issue of fact as to whether Rickards assumed a duty to hold the ladder for Plaintiff. Plaintiff testified that he asked Rickards to hold the ladder and that Rickards agreed to do so. Rickards denies that Plaintiff ever asked him to hold the ladder and asserts that he never offered to hold the ladder. Plaintiff further testified that when he climbed the ladder for the last time before his fall, Rickards was holding the ladder and that Plaintiff fell when the feet of the ladder slid out. Thus, if Rickards agreed to hold the ladder, a reasonable jury could find that he did not do so with reasonable care because the ladder slipped while Plaintiff was on it. The Court therefore denies Defendants' motion for summary judgment regarding Plaintiff's claim against Rickards.

**B. Ryan Homes' Liability**

Defendants argue that Ryan Homes cannot be liable to Plaintiff because: (1) general contractors have no duty to employees of subcontractors other than to provide a "reasonably safe workplace;" and (2) a contractor has no duty "to protect an independent contractor from the very hazard created by the doing of the contracted work[.]" (Defs.' Br., at 7).

Ryan Homes is correct that "in New Jersey, as in most jurisdictions, . . . an owner who

hires an independent contractor is not liable for the negligence of that contractor and any harm resulting therefrom." O'Keefe v. Sprout-Bauer, Inc., 970 F.2d 1244, 1250 (3d Cir. 1992) (applying New Jersey law).  New Jersey has extended that rule to apply to a general contractor's liability for injuries to a subcontractors' employees.  Wolczak v. National Elec. Prods. Corp., 168 A.2d 412, 415 (N. J. Sup. Ct. App. Div. 1961); see Meder v. Resorts Intern. Hotel, Inc., 573 A.2d 922, 924-26 (N.J. Super. Ct. App. Div. 1989) (explaining subsequent statues that have affected the holding in Wolczak).  "[T]he only duty imposed upon a general contractor who has hired an independent subcontractor is to ensure that the premises on which the subcontractor performs its work are in a reasonably safe condition." Lopez v. Roscio, No. 03-1770, 2006 U.S. Dist. LEXIS 5444, at *20-21 (D.N.J. Feb. 8, 2006) (citing Alloway v. Bradlee's, Inc., 723 A.2d 960, 964 (N.J. 1999)) (emphasis added).[1]

However, "[b]eyond a general contractor's duty to provide reasonably safe working conditions [for subcontractors], . . . a general contractor must also act in accordance with the traditional rules of tort law." O'Keefe, 970 F.2d at 1253 (emphasis added).  Thus, in O'Keefe, the Third Circuit applied New Jersey law and found that it was possible for a general contractor to be held liable for "its own negligent acts in furnishing a defective product, failing to warn [the subcontractor] regarding [certain dangers], and failing to supervise properly the rigging and installation of . . . equipment." Id.; see also Alloway, 723 A.2d at 969 (finding that a general contractor may be liable notwithstanding that it retained a subcontractor to perform work because

---

[1] This principle has several exceptions: the general contractor may be liable for acts of its subcontractors and to employees of its subcontractors if it retains control over the manner and means of performing the job, hires an incompetent contractor, or hires a contractor to perform work that is a nuisance per se. Mavrikidis v. Petullo, 707 A.2d 977, 984 (N.J. 1998).

7

the general contractor committed independent OSHA violations at the job site).

Applying general negligence principles to this case, the Court finds that Ryan Homes may be liable to Plaintiff because Rickards may have assumed a duty to hold the ladder while acting within the scope of his employment for Ryan Homes. "Under respondeat superior, an employer can be found liable for the negligence of an employee causing injuries to third parties, if, at the time of the occurrence, the employee was acting within the scope of his or her employment." Carter v. Reynolds, 815 A.2d 460, 463 (N.J. 2003). For the doctrine of respondeat superior to apply, the "plaintiff must prove (1) that a master-servant relationship existed and (2) that the tortious act of the servant occurred within the scope of that employment." Id. Thus, the doctrine of respondeat superior applies even though Rickards voluntarily assumed a duty to Plaintiff as long as Rickards was acting within the scope of his employment when he assumed that obligation. See generally Petrescu v. College Racquet Club, Inc., 40 A.D.3d 947, 949-50 (N.Y. App. Div. 2d Dept. 2007) (applying respondeat superior when defendant's employee voluntarily assumed a duty to hold a ladder for plaintiff); Raburn v. Wal-Mart Stores, Inc., 776 So. 2d 137, 139-41 (Ala. App. 1999) (allowing respondeat superior when defendant's employee voluntarily assumed a duty to apprehend shoplifting suspect safely, even though the employee did so in violation of defendant's company policy).

In this case, the parties do not dispute that a master-servant relationship existed between Ryan Homes and Rickards. Thus, if a jury determines that Rickards assumed a duty to hold the ladder, the only remaining questions are whether a reasonable jury could find that Rickards assumed that duty while acting within the scope of his employment, and whether Rickards failed to exercise reasonable care in discharging that duty.

To determine whether an employee acts within the scope of his employment, New Jersey applies the Restatement (Second) of Agency §§ 228 and 229. Id. at 465. Section 228 provides:

> (1) Conduct of a servant is within the scope of employment if, but only if:
> (a) it is the kind he is employed to perform;
> (b) it occurs substantially within the authorized time and space limits;
> (c) it is actuated, at least in part, by a purpose to serve the master[.]
> . . . .
> (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

Restatement (Second) of Agency § 228 (1958). Section 229 provides that:

> (1) To be within the scope of the employment, conduct must be of the same general nature as that authorized, or incidental to the conduct authorized.
>
> (2) In determining whether or not the conduct, although not authorized, is nevertheless so similar to or incidental to the conduct authorized as to be within the scope of employment, the following matters of fact are to be considered:
> (a) whether or not the act is one commonly done by such servants;
> (b) the time, place and purpose of the act;
> (c) the previous relations between master and the servant;
> (d) the extent to which the business of the master is apportioned between different servants;
> (e) whether or not the act is outside the enterprise of the master or, if within the enterprise, has not been entrusted to any servant;
> (f) whether or not the master has reason to expect that such an act will be done;
> (g) the similarity in quality of the act done to the act authorized;
> (h) whether or not the instrumentality by which the harm is done has been furnished by the master to the servant;
> (i) the extent to which the departure from the normal

       method of accomplishing an authorized result; and
       (j) whether or not the act is seriously criminal.

Restatement (Second) of Agency § 229 (1958).

Applying those criteria to this case, a reasonable jury could conclude that Rickards assumed a duty to hold the ladder while acting within the scope of his employment. Rickards and Plaintiff were both on the property to investigate the purported leak on behalf of their respective employers. Although Rickards asserts that Plaintiff's final ascent up the ladder related to repair work rather than inspection work, a reasonable jury could conclude that Rickards was present on the Property for the benefit of Ryan Homes and that stabilizing the ladder while Plaintiff completed his inspection and repair was incidental to Rickards' responsibilities as an on-site service manager. Indeed, Rickards went to the Property because his job with Ryan Homes required him to "oversee basic service procedures." (Rickards Dep. 7:6-7). Thus, the Court denies Defendants' motion for summary judgment because a reasonable jury could conclude that Rickards assumed a duty to hold the ladder while acting within the scope of his employment.

## IV. CONCLUSION

For the reasons discussed above, the Court denies Defendants' motion for summary judgment. An appropriate Order shall enter.


Dated: 6/20/2011                          /s/ Robert B. Kugler
                                                                            ROBERT B. KUGLER
                                                                            United States District Judge